UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CITGO PETROLEUM CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MARION E. SZOLLOSY, individually and as trustee for the owner of the property located at 520 Danbury Road, New Milford, Connecticut,<br><br>Defendant. | Civil Action No.<br><br><br><br><br><br>MAY 25, 2016 |

**COMPLAINT FOR INJUNCTIVE RELIEF**

Plaintiff CITGO Petroleum Corporation ("CITGO"), for its complaint against Defendant Marion E. Szollosy ("Defendant" or "Ms. Szollosy"), alleges as follows:

**NATURE OF THE ACTION**

1. Upon information and belief, Ms. Szollosy is a beneficial owner of, and self-described "Trustee" with control over, a defunct gasoline station that formerly operated under the "CITGO" brand. She also resides on the property in a house behind the station. The former operator of the station, an independent dealer who leased the station from the Szollosy family and who had a sublicense to use the CITGO name and trademarks, closed the station in late 2015 and vacated the premises without providing CITGO or its local distributor the opportunity to remove the CITGO signage. Despite repeated requests from CITGO and its distributor, Ms. Szollosy has steadfastly refused to grant CITGO or its distributor permission to enter the property to remove the CITGO signs—a task that CITGO has offered to do at no expense to Ms. Szollosy—unless CITGO first pay her thousands of

dollars for the "free advertising" that she claims it has received from having its signs remain on display at the closed-down station. Of course, the only reason the signs remain up is because Ms. Szollosy refuses to let them come down. Ms. Szollosy has no right to demand ransom for the return of CITGO's intellectual property, and her continued unauthorized display of the CITGO marks constitutes a violation of the Lanham Act. All that CITGO asks is to be allowed to enter the property for one day to debrand the station—and, regrettably, the only way it can do so is by obtaining an order from this Court.

## PARTIES

2.      CITGO is a Delaware corporation with its principal place of business at 1293 Eldridge Parkway, Houston, TX 77077-1670. CITGO is a refiner and marketer of petroleum products, including a complete line of motor fuels, oils, and other fluids for use in automobiles, trucks, and other vehicles. CITGO markets its motor fuels through a network of independent distributors and dealers, who are licensed to resell the CITGO-supplied fuels under the CITGO name and trademarks.

3.      Defendant is a resident and citizen of Connecticut and a beneficial owner of, and self-described "Trustee" with control over, property located at 520 Danbury Road, New Milford, Connecticut (the "Property") that includes a defunct gasoline station formerly known as "Rao's CITGO" (the "Station").

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) because this is an action arising under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051, *et seq.* (the "Lanham Act").

5.      Venue is proper in this jurisdiction under 28 U.S.C. §§ 1391(b)(1), because Defendant resides in this judicial district, and under 28 U.S.C. § 1391(b)(2), because this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## **FACTS**

### **CITGO's Trademarks**

6.      Long before the acts complained of here, CITGO adopted and began using the name "CITGO," the distinctive CITGO orange-and-red trimark, and several other registered and well-recognized accompanying designs and trade names as trademarks and trade dress (collectively, the "CITGO Marks") to identify its petroleum products. CITGO has continuously used the CITGO Marks in connection with the manufacture, distribution, and sale of petroleum products throughout the United States and has duly registered the CITGO Marks with the United States Patent and Trademark Office.

7.      Specifically, CITGO owns the following federal trademark registrations for petroleum products and related services:

| Reg. No | Reg. Date | Product or Trade Name |
|---|---|---|
| 798,036 | 1965-10-26 | Gasoline |
| 811,940 | 1966-08-02 | Lubricating oils; Automobile service station services. |
| 836,105 | 1967-09-26 | Transportation and storage of petroleum products. |
| 844,353 | 1968-02-20 | Gasoline, lubricating oils, antifreeze, automobile services station services, etc. |
| 1,912,959 | 1995-08-22 | Gasoline and lubricants for vehicles, watercraft, industrial, domestic and farm applications |

3

The CITGO Marks are attached to and incorporated into this complaint as **Exhibit A**. The registrations in Exhibit A are valid, have been used continuously since their registration with the United States Patent and Trademark Office, and remain in full force and effect.

8.  Registration numbers 798,036 and 811,940 cover the name "CITGO," numbers 844,353 and 836,105 cover both the name "CITGO" and CITGO's orange-and-red trimark, and number 1,912,959 covers CITGO's trimark.

9.  Today, CITGO is engaged in interstate commerce and markets its products and services under the CITGO Marks across the United States. CITGO products include, but are not limited to, gasoline, automobile lubricants, lubricating oils, petroleum wax, automatic transmission fluid, penetrating oil, grease, cutting oil, mold release oil, antifreeze, rust inhibitor, solvent, credit card services, automobile service station services, automobile lubrication services, and various articles of clothing.

10.  As a result of CITGO's long-term and exclusive use of the CITGO Marks on its gasoline, oils, and other products, as well as the display and sale of these products in retail stores, the CITGO Marks have become well-known and famous to the trade and general public throughout the United States. CITGO has established extensive good will in and public recognition of the distinctive CITGO Marks as exclusive identifications of CITGO's goods and services. This good will is one of CITGO's most important assets. Customers expect that the products they purchase under the CITGO Marks will meet CITGO's quality and performance standards.

4836045v1

**CITGO's Gasoline Marketing Business and Licensing of the CITGO Marks**

11. CITGO does not directly own or operate any retail outlets. Rather, it distributes its branded motor fuels through a network of independent franchisee-distributors, which CITGO refers to as "branded marketers."

12. Each branded marketer has a written franchise agreement with CITGO, known as a "Marketer Franchise Agreement" or "MFA" for short. Each MFA has two key components: (1) a supply agreement requiring the branded marketer to purchase a certain volume of CITGO-branded fuel, and (2) a license to use and sublicense the use of CITGO's brand and marks in connection with the resale of the fuel purchased from CITGO.

13. Under the MFA, each branded marketer's right to use the CITGO brand is strictly limited to use in connection with the resale of CITGO-brand gasoline, and each branded marketer and dealer is subject to CITGO's image standards and requirements. The MFA also provides that CITGO retains title to and ownership of all signs and branding materials that bear its name, trademarks or trade dress, and that CITGO also has the right to remove any such signs and branding materials from any retail location at any time.

14. Some branded marketers resell the CITGO-branded fuel at retail locations that they own and operate. In most cases, however, including this case, the branded marketer enters into its own supply and sublicensing arrangement with an independent dealer.

15. In this case, CITGO entered an MFA with a branded marketer called Warex Terminals Corporation ("Warex"); and Warex, in turn, entered into a supply and sublicensing agreement with an independent dealer called Rao's LLC ("Rao's").

4836045v1

**Use of the CITGO Marks at the Station**

16. The Station at issue here, located at 520 Danbury Road, New Milford, CT, was operated by Rao's. On information and belief, Rao's leased the Station from the owner of the Property, believed to be the Szollosy family and/or Ms. Szollosy's mother, for whom Defendant claims to act as Trustee.

17. Pursuant to a dealer franchise agreement, Warex supplied Rao's with CITGO-brand gasoline for resale at the Station. Warex also granted Rao's the right to use the CITGO Marks at the Station in connection with the retail sale of the gasoline that it supplied to Rao's.

18. In or around October 2015, Rao's stopped purchasing CITGO-brand gasoline from Warex, closed the Station, and vacated the leased premises.

19. Thereafter, Warex terminated Rao's dealer franchise agreement pursuant to the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq.*, which governs the termination or non-renewal of franchise agreements like the one between Warex and Rao's. That termination has never been challenged. Upon termination, Rao's was required to remove all CITGO signage from the Station; however, it had vacated and surrendered the leased premises without first debranding the Station or allowing CITGO or Warex to do so.

**Defendant's Refusal to Allow Removal of the CITGO Signage**

20. After Rao's vacated the leased premises, both Warex and CITGO attempted to contact the owner of the Property in February 2016 to request permission to enter the Property to remove the CITGO signs and trade dress.

4836045v1

21.     Ms. Szollosy lives on the Property in a house located behind the former gasoline station.  Ms. Szollosy has held herself out to CITGO and Warex as a "Trustee" for the Property with the authority to grant or deny access to the Property.

22.     Between February and May 2016, CITGO has repeatedly requested permission from Ms. Szollosy to be allowed to enter the Property to remove its signs.  All such requests have been deferred or denied by Defendant.

23.     CITGO has offered to pay all expenses associated with the debranding, and has retained a local sign company to remove or paint over the CITGO signs at no expense to Defendant.  Ms. Szollosy and/or her husband, Wesley Hallock, have met with representatives of the sign company at the Station to better understand the limited scope of work to be done.

24.     Requests to speak directly with Ms. Szollosy have been responded to by her husband, Mr. Hallock.  On Defendant's behalf, Mr. Hallock placed multiple calls to representatives of CITGO to convey Defendant's objections and demands concerning CITGO's request to debrand.

25.     According to Mr. Hallock, he and Ms. Szollosy do not object to the removal of the signs, but they have demanded that CITGO first pay Defendant for the "free advertising" that CITGO supposedly has received by having its signs on display at the closed Station.  On Ms. Szollosy's behalf, Mr. Hallock has also stated that numerous motorists pull into the Station each day seeking to buy fuel, only to discover that there is no fuel to be had.  CITGO has explained to Defendant and Mr. Hallock that this type of "advertising" is actually detrimental to its business and its brand, and that this is one of the reasons that CITGO is seeking to debrand the Station without further delay.

26. Defendant has never had any right, contractual or otherwise, to use or display CITGO's Marks on the Property. The fact that Rao's and/or Warex may have had such rights in the past during Rao's franchise term that was since terminated, does not provide a basis for Defendant to hold CITGO's signs hostage after termination of Rao's license to use the marks.

27. CITGO's name and trademarks continue to be used and displayed at the Station on the Property.

28. Defendant's use and display of CITGO's Marks at the Station is without CITGO's authorization or consent.

29. By reason of Defendant's acts, CITGO has suffered and will continue to suffer damage and injury to its business, reputation and goodwill.

30. Defendant's use of the CITGO Marks at the closed station on the Property has actually deceived or has the tendency to deceive a substantial segment of the public into believing that CITGO motor fuels and/or other petroleum products are actually sold at the closed station on the Property.

## COUNT I

### Trademark Infringement – Violation of the Lanham Act, 15 U.S.C. § 1114

31. CITGO repeats and incorporates the allegations of paragraphs 1 – 30 of this complaint as though fully alleged in this paragraph.

32. Defendant's use of the CITGO Marks at the closed station on the Property has actually deceived or has the tendency to deceive a substantial segment of the public into believing that CITGO motor fuels and/or other petroleum products are actually sold at the closed station on the Property. In other words, Defendant's use of the CITGO Marks at the

8

4836045v1

closed station on the Property has created and creates the false impression that CITGO products are available to the public at the closed station on the Property on a daily basis. This false impression has affected and will continue to affect not only the value of the CITGO Marks, but also CITGO's goodwill.

33. The public has been and is harmed by Defendant's use of the CITGO Marks at the closed station on the Property. Defendant has fraudulently represented and is fraudulently representing the closed station on the Property to the general public and consumers as a CITGO franchisee by continuing to demonstrate the CITGO Marks at the closed station on the Property. This action has caused and is causing confusion and mistake and has deceived and is deceiving consumers as to the origin, the licensing, and the endorsing by CITGO of the Defendant's acts, thereby affecting the value of the CITGO Marks and CITGO's goodwill.

34. Defendant's use of the CITGO Marks at the closed station on the Property constitutes infringement of registered trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

35. On information and belief, Defendant's acts have been knowing, willful, intentional, or in reckless disregard of CITGO's rights.

36. By reason of Defendant's acts, CITGO has suffered and will continue to suffer damage and injury to its business and reputation, and has or will likely sustain losses of revenues and profits.

37. Defendant's acts are irreparably damaging to CITGO and will continue to damage CITGO until enjoined by this Court. CITGO is without an adequate remedy at law.

4836045v1

## COUNT II

### False Designation of Origin and False Description – Violation of the Lanham Act, 15 U.S.C. § 1125

38. CITGO repeats and incorporates the allegations of paragraphs 1 – 37 of this complaint as though fully alleged in this paragraph.

39. Defendant's acts, including her continued use of the CITGO Marks at the closed station on the Property, have created and create the false impression that CITGO products are available to the public at the closed station on the Property on a daily basis, have fraudulently represented and are fraudulently representing the closed station on the Property to the general public and consumers as a CITGO franchisee, and have caused and are causing confusion and mistake and have deceived and are deceiving consumers as to the origin, the licensing, and the endorsing by CITGO of the Defendant's acts, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

40. On information and belief, Defendant's acts have been knowing, willful, intentional, or in reckless disregard of CITGO's rights.

41. By reason of Defendant's acts, CITGO has suffered and will continue to suffer damage and injury to its business and reputation, and has or will likely sustain losses of revenues and profits.

42. Defendant's acts are irreparably damaging to CITGO and will continue to damage CITGO until enjoined by this Court. CITGO is without an adequate remedy at law.

4836045v1

## COUNT III

### Replevin
### Conn. Gen. Stat. § 52-515

43. CITGO repeats and incorporates the allegations of paragraphs 1 – 42 of this complaint as though fully alleged in this paragraph.

44. CITGO holds title to and ownership of all signs and branding materials that bear its name, trademarks or trade dress, including specifically those provided to Warex or Rao's for use at the Station (the "CITGO Branding Materials"), and as such has a general property interest in the CITGO Branding Materials.

45. CITGO has a right to immediate possession of the CITGO Branding Materials.

46. Defendant has wrongfully detained the CITGO Branding Materials from CITGO and has no legal right to detain, possess, or deprive CITGO of possession of the CITGO Branding Materials.

47. Defendant's wrongful detention of the CITGO Branding Materials constitutes a violation of Connecticut General Statutes § 52-515.

## PRAYER FOR RELIEF

Wherefore, CITGO prays for a judgment in its favor and against Defendant that:

   a) Preliminarily and permanently restrains and enjoins Defendant, individually and as Trustee for the owner of property located at 520 Danbury Road, New Milford, Connecticut, and her officers, agents, servants, employees, attorneys, successors, assigns, and all persons in active concert or participation with any of them, individually or collectively, from:

    i. Using the CITGO Marks, or any other name or mark likely to cause confusion with the CITGO Marks, at 520 Danbury Road, New Milford, Connecticut;

    ii. Doing any other act or thing that is likely to confuse, mislead, or deceive others into believing that the closed station at 520 Danbury Road, New Milford, Connecticut, or any other activity at that location, emanates from, or is connected with, sponsored by, or approved by CITGO;

    iii. Doing any act that interferes with entry by CITGO or its agents onto the property located at 520 Danbury Road, New Milford, Connecticut, on a date and at a time set by the Court, and removal by CITGO or its agents on that date and at the time of all signs using or displaying CITGO brand names and marks from that property;

    iv. Assisting, aiding, or abetting any person or entity to engage in any of the activities prohibited in subparagraphs (i) through (iii);

b) Authorizes CITGO or its agents to enter onto the property located at 520 Danbury Road, New Milford, Connecticut, on a date and at a time set by the Court, and on that date and at that time to remove all signs using or displaying CITGO brand names and marks from that property;

c) Awards an order of replevin with respect to the CITGO Branding Materials and further awards an order enjoining Defendant from interfering with the replevin of the CITGO Branding Materials, and/or damaging, destroying or disposing of the CITGO Branding Materials;

12

d)  Requires Defendant to pay to CITGO the costs and attorneys' fees incurred by CITGO in connection with this action; and

e)  Granting such other and further relief to CITGO as the Court may deem proper.

Dated: May 25, 2016

                PLAINTIFF,
                CITGO PETROLEUM CORPORATION

By:   /s/ Karen T. Staib
       Karen T. Staib (Fed. Bar No. ct21119)
       Shipman & Goodwin LLP
       One Constitution Plaza
       Hartford, Connecticut 06103-1919
       Tel: (860) 251-5512
       Fax: (860) 251-5219
       Email: kstaib@goodwin.com
       Its Attorney